PETER STEMKOWSKI, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4239-75.    Filed May 31, 1984.

*Charles L. Abrahams*, for the petitioner.
*Harry Morton Asch* and *W. Winter Nesbitt III*, for the respondent.

### SUPPLEMENTAL OPINION

GOFFE, *Judge*: On February 17, 1981, we filed our Opinion in the consolidated case of *Peter Stemkowski and John J. Hanna v. Commissioner of Internal Revenue* which is reported at 76 T.C. 252 (1981). We entered a decision in the Stemkowski case on July 8, 1981, and on October 5, 1981, petitioner Stemkowski filed a notice of appeal of our decision to the U.S. Court of Appeals for the Second Circuit.

On December 2, 1982, we filed the judgment of the Court of Appeals in which it affirmed in part and reversed and remanded in part our decision as to petitioner Stemkowski.

The Court of Appeals reversed our finding that the contract salary paid Stemkowski did not compensate him for services performed at training camp and the playoff games. This holding requires no further consideration by this Court. The parties will count the number of days spent performing services at training camp, the number of days spent performing services in the playoff games at various locations, and allocate petitioner's salary to sources within and outside the United States.

The issues which were remanded to this Court for further consideration are the following:

(1) Which off-season conditioning expenses has Stemkowski adequately substantiated;

(2) What off-season conditioning expenses incurred by Stemkowski are deductible under section 162[1] as ordinary and necessary business expenses or are not deductible under section 262 because they are for personal fun and relaxation;

(3) What allocation of the off-season conditioning expenses should be made to sources of income from within and outside the United States;

(4) Is Stemkowski entitled to deduct as an ordinary and necessary business expense under section 162, Hockey News; and

(5) Are Stemkowski's expenses in answering fan mail work related, not requiring substantiation under section 274(d), and are such expenses ordinary and necessary under section 162.

## Off-Season Conditioning Expenses

In our prior opinion, we held that the off-season conditioning expenses paid by Stemkowski in Canada were allocable to Canadian sources of income and, therefore, not deductible under section 862(b). *Stemkowski v. Commissioner,* 76 T.C. 252, 302 (1981). It was unnecessary for us, therefore, to decide the extent to which, if at all, they would be deductible under section 162. *Stemkowski v. Commissioner, supra* at 302–303.

The statutory notice of deficiency mailed to petitioner disallowed certain deductions claimed by him on his income tax return on the grounds that he had not shown that they were "expended for the purpose designated" and that they were not shown to be ordinary and necessary and connected with the conduct of a trade or business within the United States. The Court of Appeals decided the third ground in favor of petitioner. It remains for us, therefore, to decide whether petitioner substantiated the deductions claimed and whether they are "ordinary and necessary."

In addition to the amounts deducted on the return, petitioner claimed additional deductions on a claim for refund. Respondent has not conceded the deductibility of these expenses. The focus of inquiry both in this Court and in the

---

[1] All section references are to the Internal Revenue Code of 1954 as amended, applicable to the taxable year 1971.

Court of Appeals is the deductibility of expenses incurred during the off-season of hockey while petitioner resided in Canada. *Stemkowski v. Commissioner*, 76 T.C. 252, 254, 299–303 (1981), affd. in part, revg. and remanding in part 690 F.2d 40, 42, 46, 47 (2d Cir. 1982). The parties have not contended that conditioning expenses incurred *during* the regular hockey season are deductible. Moreover, petitioner testified that during the regular hockey season he practiced every day when he did not play in a game, except for an occasional Monday when the team had had a good weekend.

It should be pointed out that in our prior opinion we made no finding of fact that petitioner incurred any of these expenses. Under our legal analysis, such findings were not necessary. We must now, therefore, examine the record for substantiation.

The burden of proving his entitlement to the deductions for off-season conditioning expenses is upon petitioner. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. On both the income tax return and the claim for refund, petitioner claimed the conditioning expenses "to keep in good physical condition *throughout the year.*" (Emphasis added.) *Stemkowski v. Commissioner*, 76 T.C. at 266; 690 F.2d at 43–44. The petition incorporated by reference the claim for refund and did not allege which conditioning expenses were claimed for the off-season and which were claimed for the regular season. After trial, we granted petitioner leave to file an amended petition to conform the pleadings to the proof, but the amended petition is no more illuminating. Based upon the record before us, we cannot decide the amounts of conditioning expenses which petitioner claims for the off-season only. He offered no evidence of the breakdown of the expenses between the off-season and regular season.

In his opening brief, petitioner requests the Court to find that petitioner spent certain sums as conditioning expenses, not differentiating between off-season and during the season.

The Court of Appeals, in holding our finding of off-season conditioning expenses erroneous, pointed out at page 46:

Off-season conditioning contributes not only to the fitness required of players on the first day of training camp under Paragraph 2(a) of the contract but also to the fitness required throughout the regular season under

Paragraph 2(b) of the contract. Thus, Stemkowski's off-season conditioning expenses were at least in part connected to United States income.

The following schedule represents those expenses claimed by petitioner on his return for "keep[ing] in good physical condition throughout the year," those claimed in the first amended petition, and those which petitioner, on brief, requests the Court to find as facts that he paid or incurred:

| Item | Income tax return | First amended petition | Brief |
|---|---|---|---|
| Golf shoes | $60 | $60 | $60 |
| Golf balls | 50 | 60 | 60 |
| Green fees | 330 | 384 | 384 |
| Bowling | 30 | 40 | 40 |
| Sweat suit | 10 | 20 | 20 |
| Running shoes (Adidas) | 15 | 15 | 15 |
| Swim suit | 15 | 13 | 13 |
| Tennis balls | 10 | 20 | 20 |
| Tennis shoes | 15 | | |
| Therapeutic treatment | 25 | 100 | 100 |
| YMCA membership | 100 | 155 | 155 |
| Golf clubs | 90 | | |
| Tennis racket | 4 | | |
| Trainer's fees | 20 | 250 | |
| Bowling shoes | | 8 | 8 |
| Canoe Club | | 100 | 100 |
| Depreciation of golf clubs | | 141 | 141 |
| Depreciation of tennis racket | | 4 | 4 |

The existence of the inconsistencies among petitioner's claims is difficult to understand in light of the fact that the same attorney who tried this case for petitioner filed the first amended petition and briefs and also prepared petitioner's income tax return. We wonder what evidence he had before him when he prepared petitioner's income tax return.

Out of the 94 exhibits submitted at trial, there is only one document submitted to substantiate petitioner's deductions for off-season conditioning expenses. It was an undated invoice for golf clubs, purchased not in Canada where petitioner resided during the off-season, but in New York where he played hockey during the regular season. Petitioner testified that he purchased the clubs near the end of the season in late March or early April of 1971, his first year in New York.

Counsel for petitioner attempted to introduce into evidence canceled checks for golf expenses, restaurant and bar bills incurred in 1975 through 1977 at Rockville Links in Long Island, N.Y. (which, of course, could have been incurred only during the regular playing season), to show what petitioner spent in 1971 (the year involved here) during the off-season in Canada. This illustrates petitioner's desperation in attempting to substantiate the off-season conditioning expenses.

At this juncture, before we review petitioner's testimony, we feel some explanation is in order as to the matter of characterizing this case as a test case. These consolidated cases were set for a special session of the Court. The trial lasted from August 29 through September 16, 1977. There are 2,004 pages of transcript. Because of the number of cases pending with common issues of law and fact, we held several pre-trial conferences. Petitioner's counsel requested the Court to decide the off-season conditioning expense issue on hypothetical facts which, of course, we refused to do. Counsel for the parties asked the Court to select the test cases, which we also refused to do because the Court had no way of knowing what evidence might be forthcoming in cases we had never heard. We, therefore, directed the parties to select as many test cases as would be necessary to resolve the issues in all of the cases, and we assumed that the parties complied with the directions of the Court. After we filed our opinion in the instant consolidated case, we directed the parties to settle the other cases listed in the opinion *Stemkowski v. Commissioner*, 76 T.C. 252, 253 (1981).

We first began to experience difficulty when counsel for petitioner advised the Court that there were substantiation problems in the other cases. We currently have 113 more of these cases assigned to this division of the Court. Counsel for petitioner in the instant consolidated case of Stemkowski and Hanna represents all of the petitioners in all of the other 154 cases assigned to this division of the Court. Because he selected the "test cases," we assume that the substantiation is no better in any of the other cases. Accordingly, we will decide the question of substantiation here. We are not in the business of writing law review articles on hypothetical sets of facts.

In general, the testimony of Stemkowski, the only evidence offered in substantiation of the off-season conditioning ex-

penses, was unsatisfactory. He testified on August 29 and 30, and we pointed out at that time that documentary evidence should be offered and witnesses should be called to substantiate petitioner's deductions. Counsel for petitioner asked to submit information on the deductions claimed and asked the Court to direct respondent's agents to verify these deductions in the New York area. This we refused to do.

The following colloquy from trial demonstrates the lack of understanding of petitioner's counsel as to substantiation:

MR. ABRAHAMS (Counsel for Petitioner): Your Honor, if—if there were checks, I would have introduced them into evidence, but I—I don't believe that petitioner has the burden, if he doesn't have the checkbook—of producing a check in order to obtain that deduction. I would think that the Internal Revenue Service in their manual would have required before they allowed that deduction the documentation—

THE COURT: I don't care what's in the Internal Revenue Service manual. This Court in the rules of evidence requires petitioner to substantiate every deduction he takes. And it's up to him as to how he does it. If he writes checks, that's fine. If he doesn't, then he should get receipts. But that's a matter that—that the burden of proof is clearly on the petitioner. And it's not respondent's responsibility to help you get your evidence together.

We immediately explained petitioner's burden of proof to his counsel as follows:

MR. ABRAHAMS: Well, if there's a revenue agent in New York that would verify it, it wouldn't be a burden here. All he'd have to—I'd give him a list of everyone that he can contact and verify this information from. And it would be easily—easily obtained and wouldn't interfere at all with respondent's burden right now regarding this case, because it would be another individual that would go out and check out all the information that—that—you know, I feel should presented or stipulated to—to this Court so that Mr. Stemkowski could get the deductions that I believe he's entitled to.

THE COURT: You should have thought of that when you filed the petition.

\*       \*       \*       \*       \*       \*       \*

THE COURT: Well, let's go ahead as best we can at this point and see as these items come up how best we can handle them. But—but you still—you know, we're going to be here for two weeks. You still can call people as witnesses, you can still attempt to prove it anyway you want to.

\*       \*       \*       \*       \*       \*       \*

THE COURT: Well, I still don't think the time is too late within which you can get witnesses to appear. You can still subpoena them and get them here to testify if you want to substantiate it. But I don't think that it's—I don't

think it's right to expect the respondent to get his agents out to verify the—the evidence. You have—you have an affidavit from this realtor. You can get some subpoenas and mail them to New York and have her served and have her here certainly next week some time if you want to prove it.

MR. ABRAHAMS: Then—then I believe, Your Honor, that—you know, the trial will last a lot longer than the two week period anticipated.

THE COURT: Well, it might be and we may have to—to extend it, but—

The trial concluded on September 16, 1977, and petitioner offered no additional proof in substantiation of the deductions.

The following excerpt from petitioner's testimony demonstrates why we are reluctant to allow petitioner's deductions without proof:

BY MR. ABRAHAMS:

Q. Could you tell me, Mr. Stemkowski, what kind of records you kept in 1971 regarding payment of your checks—payment of your rent, excuse me.

A. Well, you know, in those days I was single. I—I could say I was probably very irresponsible, flamboyant, probably and I know I was making fairly good money at the time. I was probably—spent a little bit too much on things I shouldn't have. I—when I wrote a check, I never recorded it. I—I would pay a check probably at many times I didn't know how much money I had in my checking account. When I paid something by check, I—I just handed a check. I never recorded it. I found since I got married, I've become a lot more responsible and I find that I start writing these things down. But at that time, when I was single I really didn't keep many records.

Petitioner could not be expected to recall in 1977 (when he testified) what he spent for various items in 1971. This is admitted by his attorney at trial by the following statement:

MR. ABRAHAMS: Because Mr. Stemkowski hadn't kept his records, circumstantially I'd like to show what expenses that he incurred in 1976 to show that standard of living that he had to corroborate what his testimony is as far as living expenses in 1971. The taxpayer we're talking about six years ago, we're talking about an individual that really wasn't that concerned about how many pennies he spent. I believe that there—there should be corroborative evidence to show what he spends in 1976 and other years. To show what he spent would corroborate his testimony providing the living expenses for 1971.

The colloquy as to when he left New York for Winnipeg in 1971 demonstrates petitioner's inability to recall dates:

BY MR. ABRAHAMS:

Q. Do—do you recall in 1971 when you left New York to go to Winnipeg?

A. I believe it was in the early part of May something. I couldn't tell you the exact date—six years ago.

Again, counsel for petitioner, at trial, emphasized his client's failure to keep records of his expenditures for 1971, the year before the Court.

MR. ABRAHAMS: I think the pattern of living that—that he has is—is material. I think that the fact that he didn't keep records, I think is—is a material issue. I think it bears on the weight of his testimony. I believe that—you know, an individual like Peter Stemkowski who didn't keep accurate records; who spent money when he was single without—remembering how much, I think that—that all bears on—on the—on the expenses that were incurred in New York in 1971. It bears on the type of business entertainment that he incurred. It—it bears on the type of records that should be demanded of Peter—of Peter Stemkowski show his—his habits as to how much he spends and—and also the—I believe the requirement of the taxpayer to show by records what he spent as far as certain expenses that he incurred. I think that oral testimony is relevant to the—to the—the issues of these expenses and anything that I can show by documentary evidence to show that he did spend that in 1971 is a relevant matter. Its weight I feel may be a different thing. But I feel the relevancy is there, Your Honor.

We have carefully read again all of petitioner's testimony concerning the deductions claimed for conditioning expenses. In general, he testified that he purchased a majority of all of the items claimed as deductions at Cosby's, a sporting goods store, located downstairs in Madison Square Garden where petitioner trained during the regular season. There is no testimony as to whether these items were purchased before the off-season when he went to Canada or after the regular season began in the fall. If they were purchased before going to Canada, some could have been used for off-season conditioning. If they were purchased after the off-season, they would not be deductible in 1971, the only year before the Court. Drawing any conclusions as to when the purchases were made would be utter speculation. Even if we applied the rule of *Cohan v. Commissioner*, 39 F.2d 540 (2d Cir. 1930), which petitioner urges and which we will discuss in greater detail below, its application bears heavily against the taxpayer because the inexactitude is of his own making. *Cohan v. Commissioner, supra.* We decline to speculate as to when petitioner purchased any of the items he deducted.

Petitioner testified that his off-season training activities in general, which he performed in Winnipeg, consisted of 3 days a week of the following routine:

BY MR. STEMKOWSKI:

A. Well, I had a regular program in those days that I followed. I—I belong to the Central Winnipeg YMCA. I was a member there for a good part of five years. I worked there at noon. I'd run around the track. I would get into a game of basketball. I'd lift some weights, ride the stationary bicycle. After lunch break, I would go to the Canoe Club that was mentioned. I'd play racket ball and squash in the afternoons. And in the evenings, maybe once a week, I would go out and play tennis. They had all the facilities there,—the pool and the golf course there and racket, squash courts and I would go there in the afternoons after I went to the YMCA.

On the other days he played golf.

As to testimony on specific activities, petitioner testified as follows about tennis in response to questions by his own counsel:

BY MR. ABRAHAMS:

Q. How often did you play tennis in—did you play tennis in 1971?

A. Yes. I tried to get out once a week at least.

Q. Do you recall if you purchased a tennis racket?

A. Yes, I did. They were doing all this stuff in New York. There were a lot of facilities.

Q. Did you buy—did you buy tennis shoes in 1971?

A. Tennis shoes and sneakers, I play—I use the same. A sneaker and a tennis shoe to me is the same thing.

Q. Did you—did you purchase any tennis balls in 1971?

A. Yes.

Q. Do you—

A. Cans.

Q. Do you recall how many cans you purchased in 1971?

A. Oh, I may have spent $20.00 on tennis balls.

Q. Where did you purchase the items that I—that I mentioned to you?

A. Well, I used to buy a lot of my stuff right downstairs in Madison Square Garden.

Q. What was the name of the—

A. Cosby's Sporting Goods.

Q. Did you buy the—all the items that I just mentioned there, do you recall?

A. A great deal of them. I mean, if I bought tennis balls, I probably bought a few cans somewhere else, but the majority of all those things I bought at Cosby's, yes.

As indicated above, he testified he played tennis at the Canoe Club in Winnipeg "maybe once a week," sometimes bringing a guest.

His only testimony about running was that he ran a few times a week, but not on Sundays, which he spent with his family. He drew no distinction between off-season and during the season.

His testimony about golf is also vague and inexact. He testified as follows in response to his counsel's questions:

BY MR. ABRAHAMS:

Q. Did you play golf during the regular season?
A. During the hockey season? Not—not too often, no.
Q. Do you have any idea how many—
A. Towards the end of the season, come spring, if we had an off day, we'd go out and hit the ball a little bit but not during the winter, no, a little— occasionally in the fall, just before the season started, but nothing in between that.
Q. Did you—did you play golf when you were at training camp in 1971?
A. Oh, yes. This is in Kitchener, yes.
Q. Why did you play golf?
A. Why?
Q. Yes.
A. Well, I find that after you skate for about four hours, it's—it's nice to get out there and limber up. I think it's—I enjoy walking the course. I think it's good for me physically and it's good for me mentally. I find that I'm able to relax out there. There's no noise. There's no phone calls. There's no whistles blowing and just getting out in the fresh air and walking the course, I find it's beneficial to me.
Q. And—and during the off season, why did you play golf?
A. Probably for many of the reasons I just stated.

Even if he substantiated the expenditures, it is clear that golfing was recreational and not a conditioning exercise to petitioner.

He swam both during the season and the off-season. He testified about messages, as follows, in response to questions by his counsel:

BY MR. ABRAHAMS:

Q. Could you tell me if you went for massages in the year 1971?
A. Well, usually when you go on the road and at home too sometime, but on the road when you would check into a hotel, I think one of the first things you would ask is—as many large hotels have health—a health facility in the hotel—in a lot of the cases, we would go down and have a steam and have a rub down quite often, yes.

Q. Do you know approximately how much you spent for massages in '71?
A. Oh, I'd say $100.

He was a member of a bowling league in New York (during the regular season), and his bowling activities involved taking "a girl" along. He contributed to buying beer for the winner. He offered no testimony as to the frequency he played or allocation between playing in the off-season and the regular hockey season.

We will now examine petitioner's testimony as to the specific items claimed as deductions (listed above).

We have held above that petitioner's golfing activities were recreational, not engaged in for conditioning. Accordingly, no purpose would be served by commenting upon his unsupported testimony as to the cost of golf shoes, golf balls, or green fees. He offered no evidence as to the useful life or salvage value of the golf clubs, so depreciation would not be allowable even if he engaged in golfing for conditioning.

He deducted $40 for bowling and $8 for bowling shoes. Bowling cost $1 per hour, and shoes rented for $0.75 or $1, which he rented for himself and his girl. Of course, the portion in New York was during the hockey season and he testified as to no specific instances of bowling in Canada. His description hardly sounds like conditioning. In addition to our disallowance of the deductions due to petitioner's failure to substantiate and his failure to allocate between off-season and during the hockey season, we also conclude that the activity was recreational and nondeductible under section 262.

Petitioner deducted the cost of a sweat suit as $10 but amended the petition to claim $20 and claimed $20 on brief. His testimony as to its cost was as follows in response to questions from his counsel:

BY MR. ABRAHAMS:

Q. Do you know approximately how much you expended for the sweat suit?
A. $20.00 I think, $15.00 — everything is like $17.00 plus tax — a round figure would be $20.00.

Although he testified that he used the sweat suit in 1971, he offered no explanation as to the activity for which he purchased it or wore it or whether it was used in Winnipeg, New York, or both. If he thought at trial he paid $20, why did he

claim only $10 on his income tax return filed in 1972 when his memory was closer to the time of purchase on some unknown date in 1971? We allow no deduction for the sweat suit.

He testified that he purchased Adidas running shoes for $15 but never testified as to their use during the season or off-season. This is another example of failure of proof, and we allow no deduction for running shoes.

He claimed the cost of a swimming suit at $15 on his return but only $13 in his first amended petition. He testified that he swam in the summertime and wintertime too and that there is a pool where "we train." Again, this expenditure, if made at all, relates to both the off-season and the regular hockey season. The evidence is, therefore, insufficient to allocate between off-season and the regular season and is, therefore, disallowed for that reason and also for lack of substantiation.

In connection with his tennis activities, petitioner claimed on his return $10 for tennis balls, $15 for tennis shoes, and $4 for tennis racket. In his first amended petition and on brief, he increased his claim for tennis balls to $20, he abandoned his claim for tennis shoes and claimed the $4 for tennis racket as depreciation of tennis racket. He offered no explanation at trial as to why the amounts now claimed are different from the amounts claimed on the return and offered no documentary proof whatever. He testified that he tried to play tennis once a week in 1971, not differentiating between the off-season and the regular hockey season. These amounts are disallowed in full because of our inability to allocate because, as explained above, there was testimony about purchasing the items in New York and playing tennis in New York (which would be during the hockey season) and because there is no substantiation. As to depreciation of the tennis racket, there is no documentary evidence or even any testimony as to the cost of the tennis racket, its useful life, method of depreciation, or salvage value.

Petitioner, on his return, claimed $25 for "therapeutic treatment" but in his amended petition and on brief he increased the claim to $100 for what he then described as massage. As explained above, there is no allocation between expenditures made during off-season and when petitioner was on the road during the regular hockey season. There is no evidence of any payment and no explanation as to why $25

was claimed on the return but $100 on the amended petition and brief. This deduction is disallowed.

Petitioner claimed $100 for YMCA membership on his return which he increased to $155 on his amended petition and brief. No explanation was offered as to why the amount claimed was increased. He testified that he belonged to the YMCA in Winnipeg, for which he paid $100 for the summer but the membership card could be used at any YMCA in the country. Then he said the membership was $100 or $105 but that steam was an extra $50. He offered no documentary proof. He also testified that he had been a member for 5 years. He testified to this in 1977 but counting back 5 years would be 1972, not 1971, the year in which he claimed the deduction. Again, he has failed to substantiate this deduction and is allowed nothing.

The Court of Appeals directed us to consider the applicability of section 274 on the deductions claimed for club dues. In light of our conclusion as to petitioner's failure to substantiate under the rules as applicable to section 162, however, we need not reach the applicability of section 274, if any, to this matter, or, whether, if substantiated, the expenditures are deductible pursuant to section 162.

On his return petitioner deducted $90 for golf clubs. At trial we explained that the cost of golf clubs would not be deductible in 1 year but would be subject to depreciation. In his amended petition and on brief, he claimed $141 as depreciation of golf clubs but offered no explanation as to how he computed the useful life or salvage value or method of depreciation claimed. As explained above, he offered into evidence an undated sales slip for golf clubs. He has failed to substantiate this deduction.

The $20 petitioner claimed for trainers' fees which he increased to $250 in his amended petition was held not to be allowable by the Court of Appeals. *Stemkowski v. Commissioner*, 690 F.2d 40, 47 (2d Cir. 1982).

The remaining item to be considered is dues to the Canoe Club in Winnipeg. Petitioner claimed no deduction for this item on his return but claimed $100 in his amended petition and $100 on brief. He testified that it cost $100 for the summer but offered no documentary proof nor any explanation for his failure to claim these dues on his return.

As enumerated above, petitioner claimed many deductions on his return for 1971, but with no documentary proof of the deductions. He made no attempt to obtain substantiation prior to or during the trial. Some of the items such as YMCA membership dues and Canoe Club membership dues would probably be subject to such proof at the time of trial even though not obtained earlier. Petitioner's failure to adduce such evidence must mean that, if offered, it would be unfavorable. *Wichita Terminal Elevator Co. v. Commissioner*, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

On brief petitioner argues, without citation of any authority, that he does not have to produce documentary evidence to obtain legitimate business deductions under section 162 of the Internal Revenue Code. That argument is so patently incorrect that it requires no citation of authority to the contrary. Petitioner then cites cases in which the Court has allowed deductions by applying the rule of *Cohan v. Commissioner*, 39 F.2d 540 (2d Cir. 1930). There are literally thousands of cases in which the Court has applied the *Cohan* rule or refused to apply it. Its application depends upon the facts and circumstances of individual cases. We decline to apply it in this case. No evidence, documentary or by testimony, was offered to allocate the conditioning expenses between those incurred during the off-season (the issue before the Court) and those incurred during the regular hockey season. The amounts claimed on the return, in some instances, are different from, and usually less than, the amounts claimed at trial, without explanation. Some of the items claimed were subject to documentary proof at time of trial even if such proof was not obtained by petitioner at the time the expenditure was made.

Although the *Cohan* rule has been applied in numerous cases, it is not automatic, and the taxpayer must come within its rationale to benefit from its application. The Court of Appeals in *Cohan v. Commissioner, supra*, held that because the Board of Tax Appeals found as a fact that the taxpayer had paid travel and entertainment expenses, it was inconsistent to allow him no deductions simply because he had not substantiated amounts known to be spent. In the instant case, for the reasons set forth above, we are unable, based upon the record before us, to find as a fact that petitioner actually paid any of the sums he claims as off-season conditioning expenses in the

taxable year 1971. Accordingly, the *Cohan* rule is inapplicable to the facts in this case.

The issue of deductibility of off-season conditioning expenses of professional athletes is important. We reiterate that in remanding the case to us the Court of Appeals held as follows:

Off-season conditioning contributes not only to the fitness required of players on the first day of training camp under Paragraph 2(a) of the contract but also to the fitness required throughout the regular season under Paragraph 2(b) of the contract. Thus, Stemkowski's off-season conditioning expenses were at least in part connected to United States income. [*Stemkowski v. Commissioner*, 690 F.2d at 46.]

We cannot decide the issue as framed by the Court of Appeals because petitioner has not substantiated the off-season conditioning expenses. If the expenses are not deductible because they have not been substantiated, to speculate on their deductibility, if substantiated, would be dicta and hypothetical. We will not decide such an important issue in this manner. Accordingly, all of petitioner's conditioning expenses (which are claimed by him for both off-season and during the season) are disallowed in full for lack of substantiation.

## Expenses in Answering Fan Mail

The Court of Appeals, in remanding the case, directed that we decide whether petitioner's expenses incurred in answering fan mail were deductible. It pointed out that such expenses need not be substantiated under section 274(d). We found as a fact that he spent between $50 and $60 in 1971 for stamps and envelopes for answering fan mail. *Stemkowski v. Commissioner*, 76 T.C. 252, 265 (1981). We hold that the costs of answering fan mail are ordinary and necessary business expenses deductible under section 162.

## Hockey News

The Court of Appeals also remanded the case for us to decide whether petitioner's cost in purchasing Hockey News meets the ordinary and necessary business expense standard of section 162.

Petitioner testified that he spent "$50, $60" for Hockey News in 1971. It is published once each week in the winter and

once each month in the summer. Petitioner described it as the "hockey Bible" which has a story on each professional hockey team. He testified further that he was a regular subscriber and "followed it" every week.

Section 1.162–6, Income Tax Regs., permits a professional man to deduct the cost of subscriptions to professional journals. The Court of Appeals directed our attention to *Noland v. Commissioner*, 269 F.2d 108 (4th Cir. 1959), affg. a Memorandum Opinion of this Court. It was pointed out in that opinion (at 111) that the Commissioner allowed a corporate executive to deduct a subscription to the Wall Street Journal.

It would have been helpful if petitioner had introduced into evidence a copy of Hockey News to show its contents and cost. Nevertheless, petitioner's testimony adequately establishes that this publication is in the nature of a trade journal and we hold that he may deduct its cost of $55.

*Decision will be entered under Rule 155.*