William J. and Mary Ann Hezel v. Commissioner.
Hezel v. Commissioner
Docket No. 8800-82.
United States Tax Court
T.C. Memo 1985-10; 1985 Tax Ct. Memo LEXIS 623; 49 T.C.M. (CCH) 458; T.C.M. (RIA) 85010; January 7, 1985
William J. Hezel, pro se., St. Louis, Mo.Donald L. Wells, for the respondent. SHIELDS
*459 Memorandum Findings of Fact and Opinion SHIELDS, Judge: Respondent determined a deficiency of $7,012.70 in the income tax due from petitioners for 1978. By amended answer, *624 respondent increased the deficiency to $7,480.70.After concessions, the issues are (1) whether petitioners are entitled to deduct transportation expenses in excess of those allowed by respondent; (2) whether certain treasure hunting engaged in by petitioner, William J. Hezel, in 1978 constituted an activity engaged in for profit within the meaning of section 183; [1] (3) whether petitioners are entitled to deduct miscellaneous expenses in excess of those allowed by respondent; (4) whether petitioners are entitled to deduct medical expenses in excess of those allowed by respondent; and (5) whether the income earned by petitioner, William J. Hezel, is subject to self-employment tax. Findings of Fact Some of the facts have been stipulated and are so found. The stipulation and exhibits attached thereto are incorporated herein by reference. Petitioners, William J. and Mary Ann Hezel, husband and wife, resided in St. Louis, Missouri *625 during 1978 and when they filed their petition in this case. They filed a joint income tax return for the year 1978 with the Internal Revenue Service Center at Kansas City. Since Mary Ann Hezel is a party to this action solely because she signed the joint return, the word "petitioner" will hereinafter refer only to William J. Hezel. (1) Transportation Expenses. Petitioner is a professional engineer. During 1978 he earned $31,270 as an independent contractor for Meridian Engineers & Associates of St. Louis (Meridian). Most of the engineering services performed by petitioner for Meridian during 1978 were related to a project being done by Meridian at that time for Pfizer Corporation. The site of this project was 10 miles from Meridian's office and Meridian's office was 15 miles from petitioner's residence. On a typical day in 1978, petitioner drove his personal automobile the 30 miles from his residence to Meridian's office and bakc. While at the office, he worked most of the time at a designer's table or a desk. However, during the course of each day, he was required to make an average of two round trips in his personal automobile to the Pfizer project in order to check on *626 its progress and to coordinate its development with the engineering office at Meridian. He was also required to make frequent trips in his personal automobile *460 within the project grounds in order to inspect the plant and equipment and to plan for expansion. No log or other simultaneous record of the use of the personal automobile was made by petitioner during 1978. During 1977 and 1978, petitioner was also involved in the salvage and attempted sale of used equipment acquired by petitioner under a contract with Terminal Railroad Association (TRRA). Under the contract which was executed in the early part of 1977, petitioner acquired the right for a total consideration of $20,000 to salvage the equipment from an obsolete mail conveyer system owned by TRRA. Pursuant to the agreement as amended the equipment had to be dismantled and removed by petitioner from the property of TRRA by December 31 1977. At the time he entered into the contract with TRRA petitioner believed that he could salvage and sell a number of reusable parts from the conveyer system and dispose of the balance as scrap. However, his expectations have not been realized because during 1978 no sales were *627 made from the end of 1977 to the date of trial almost all of the equipment remained in storage on the farm of a friend of petitioner. The farm is located approximately 40 miles from petitioner's residence. In addition to the salvage and attempted sale of the conveyer equipment petitioner also attended several auctions of other equipment during 1978. These auctions were conducted in Kentucky, Illinois, Minnesota, and Alaska. The auction in Alaska covered equipment and parts used or left over from the construction of the Alaskan pipeline. It included vehicles, tires, communication equipment such as radios, and parts for tractors and trailers. While in Alaska petitioner's purchases were limited to some cold weather gear for his personal use and a 1975 Ram-Charger which he apparently bought at a private sale and drove back to St. Louis. He made no purchases at the other auctions, On their 1978 return, petitioners deducted $4,657.30 as business transportation expenses. At trial and on brief they contended the deduction included petitioner's are fare to attend the auction in Alaska as well as automobile expenses incurred by him on his return from Alaska and in connection with *628 his work for Meridian, the salvage of the conveyor equipment, and his attendance at the various auctions of equipment. Respondent disallowed the deduction in its entirety because petitioners refused to submit any substantiation relying instead upon a claim of privilege under the Fifth Amendment. In response to our order directing them to comply with respondent's discovery proceedings, petitioners produced some documentation with respect to the claimed expenses. As a result respondent conceded that they were entitled to a deduction in the amount of $1,193.23 for actual transportation expenses. At trial, petitioners attempted to establish that they were entitled to a greater deduction for transportation by use of the optional method of computation based upon mileage. (2) Treasure Hunting Activities. During 1978, petitioner prepared and entered into a written agreement with George Ankarlo, who was familiar with the gold mining regions of Arizona and New Mexico. Under the contract Ankarlo was to use his best efforts to prospect an area in Socano County, New Mexico, in search of a certain gold brick treasure which was allegedly buried there. The contract further provided that if *629 the treasure were found, petitioner would receive $5,000,000 in gold for the $4,000 payment he made to Ankarlo. Ankarlo began his search during the week of November 13, 1978, and shortly thereafter petitioner joined him in New Mexico. The search apparently consisted of the selection of a few test sites and the digging of a number of "dry holes." No gold or other treasure was found. Petitioner spent the remainder of the trip visiting various cities in Arizona and New Mexico with a few side trips to the desert. On their 1978 return petitioners deducted $4,600 as exploration expenses. The deduction included the $4,000 paid to Ankarloplus an additional $600 for petitioner's automobile, lodging and meal expenses during the trip to Arizona and New Mexico. Respondent disallowed the entire deduction. (3) Miscellaneous Expenses. In addition to the transportation and exploration expenses described above petitioners also deducted certain miscellaneous business expenses on their 1978 return. Here again respondent disallowed all of these expenses in his notice of deficiency because petitioners refused to furnish any substantiation. At first, petitioners based their refusal to cooperate *630 with respondent on a claim that under the Fifth Amendment, their signature was sufficient to substantiate any expense listed on their *461 tax return. When ordered to comply with respondent's discovery request, petitioners submitted checks, receipts, and correspondence with respect to the salvage business. With this documentation respondent conceded that some of the miscellaneous business expenses claimed by petitioners were allowable. The miscellaneous business expenses claimed by petitioners with respect to the salvage business and the amounts conceded by respondent are as follows: Amount
Amount
Claimed
Conceded
Item
By Petitioner
By Respondent
Advertising
$ 784.00
$ 207.14
Bank Charges
67.63
Commissions
80.00
Dues &
Publications
182.70
Freight
1,445.00
607.80
Insurance
78.00
Interest
61.77
Legal and
Professional
100.00
755.65
Office Supplies
50.00
Postage
10.00
Repairs
1,224.02
Supplies
805.92
566.90
Taxes
35.00
Telephone
122.00
Travel &
Entertainment
420.00
Total
$5,466.04
$2,137.49
Although petitioners reported no sales in the salvage business during 1978, petitioners claimed a deduction of $15,056 *631 for cost of goods sold.The deduction allegedly consisted of expenditures made by petitioner during 1978 for the purchase of a crane, a tractor, and a forklift as well as certain labor and supplies related to the salvage inventory. The deduction also included petitioner's estimate of the amount of shrinkage in the inventory during 1978. At first respondent disallowed the entire deduction for cost of goods sold but after receipt of certain substantiation with formal discovery respondent conceded the deduction with respect to the labor expenditure. The detail with respect to the deduction claimed by petitioners and the amount conceded by respondent is set out below: Amount
Amount
Claimed
Conceded
Item
By Petitioner
By Respondent
Purchases
$10,245.00
Labor
1,300.00
1,300.75
Supplies
211.00
Inventory
Shrinkage
3,300.00
Total
$15,056.00
$1,300.75
(4) Medical Expenses. On their 1978 tax return, petitioners claimed medical and dental expenses, before adjustment, as follows: Medical Insurance Premiums
$355.40
Medicine and Drugs
43.99
Doctors and Hospitals
277.14
Total Claimed
$675.93
At first respondent disallowed the entire *632 deduction but with substantiation obtained from petitioners by formal discovery he conceded the following: Medical Insurance Premiums
$350.40
Medicine and Drugs
43.39
Doctors and Hospitals
197.79
Total Conceded
$591.58
At trial, petitioners belatedly submitted documentary evidence to substantiate all of the medical expenses claimed on their return. (5) Self-Employment Tax. As stated hereinbefore, petitioner, William J. Hezel, is a professional engineer and in 1978 he rendered engineering services to Meridian for which he was paid $31,270. Petitioners have conceded that the $31,270, less related professional expenses, is self-employment income and is subject to self-employment tax under section 1402. Respondent concedes that at least $4,631.47 in expenses are properly related to the self-employment income. Opinion (1) Transportation Expenses. All ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, including expenditures for business transportation, are deductible under section 162. However, it has long been established that the cost of commuting from a taxpayer's residence to his principal place *633 of business or employment is a personal expense which is not deductible under section 162. This is true even though the taxpayer is an independent contractor as distinguished from an employee. Heuer v. Commissioner [Dec. 23,696], 32 T. C. 947 (1959), affd. per curiam [61-1 USTC P9123] 283 F.2d 865 (5th Cir. 1960). The principal place of business or employment is usually the place at which the taxpayer performs his first business duties in each day. See Kutchinski v. Commissioner [Dec. 28,881 (M)], T. C. Memo. 1968-46. Petitioner contends that he maintained an office in his home from which he conducted his engineering business and that he is entitled to deduct his cost of transportation *462 from that point as a business expense. Although he testified that he had a desk, drafting table, and other equipment at his home, it is apparent from the record as a whole that his principal place of employment during 1978 was at Meridian's office. He reported there each morning and returned there after each trip to Pfizer. Consequently the expense incurred by him in traveling from his residence to Meridian's office and back are nondeductible *634 commuting expenses. Any additional expense for business transportation from Meridian is deductible under section 162. Heuer v. Commissioner, supra at 953. Therefore, the cost of the twice daily trips from Meridian's office to the site of the Pfizer project as well as the transportation within the project are deductible. However, we are unable to accept petitioner's testimony that he worked 365 days at Meridian during 1978 in view of his other testimony to the effect that during the year he made trips to Alaska, Kentucky, Illinois, Minnesota, Arizona, and New Mexico. We are also unable to accept his uncorroborated testimony that he traveled 10,000 miles during the year within the Pfizer project. Using our best judgment and considering the record as a whole, and bearing heavily against the petitioner because of his failure to maintain accurate records, we conclude that he made the round trip from Meridian to Pfizer and back on 500 occasions during 1978 which represents two trips a day for 250 days. In the same manner, we conclude that he traveled 5,000 miles on business within the project during 1978. [2]
*635 Respondent is correct in pointing out that the use of actual expenses and the optional method based on mileage are mutually exclusive. However, petitioners on the record herein are not estopped from using the optional method simply because they initially attempted to substantiate their transportation expenses through actual records. After all, the purpose of the optional method is "[t]o relieve individuals from the necessity of maintaining certain detailed travel expense records." Rev. Proc. 64-10, 1964-1 C.B. (Part 1) 667. See also Rev. Proc. 82-61, 1982-2 C.B. 849, modified by Rev. Proc. 83-74, 1983-2 C.B. 593. Petitioner also claimed business mileage in connection with the salvage business. At trial and on brief he argued that he maintained an office in his home for the salvage business and consequently any transportation costs incurred in traveling between his home and the storage site of his inventory should be deductible. We have previously found that his principal place of employment during 1978 was at Meridian's office where he was provided with a desk and a designer's table. His contention that he maintained an office in his *636 home for the supply business is discredited to a large extent by the fact that many of the documents associated with the salvage business such as statements, receipts, checks, and correspondence bear Meridian's address and petitioner testified that his salvage business records were stored at Meridian prior to their alleged theft. Furthermore, the record contains no evidence which tends to indicate the distance from Meridian to the farm on which the salvage equipment was stored or how many trips were made during 1978 by petitioner to the farm. Consequently, petitioner has failed to prove that he is entitled to a deduction for any business mileage with respect to the salvage operation. Petitioner also contends that he should be allowed to deduct the cost of traveling to and from the out-of-state equipment auctions, including the one in Alaska. Without determining the issue of substantiation of such expenses, we note that unless an activity is engaged in for profit, section 183 limits the deduction of any applicable expense to the income derived from such activity. [3] Whether an activity *463 is engaged in for profit is determined by a number of factors including the time *637 spent, the manner in which the activity is carried out, and the extent of any profits. Section 1.183-2(b), Income Tax Regs.
*638 From the record before us, petitioner's attendance at the auctions cannot be considered an activity engaged in for profit. First, the record contains no indication that petitioner bought anything at the auctions other than some personal cold weather gear. Second, the total time devoted to the activity must have been insignificant in view of petitioner's testimony to the effect that during 1978 he worked 365 days at Meridian, completed the salvage of the conveyer system and spent some time hunting for treasure in Arizona and New Mexico. Finally, the activity was not carried on in a business-like manner because no records were kept, no equipment was purchased or sold, and of course no profit was realized. Therefore, under section 183, any transportation expense incurred with respect to the auction activity is not deductible. (2) Treasure Hunting Activity. Petitioner incurred expenses but derived no income from his treasure hunting activity. Consequently, under section 183, none of the expenses are deductible unless the activity was engaged in for profit. Petitioner has the burden of proof with respect to a profit motive. Rule 142(a). Under section 183 a reasonable expectation *639 of a profit is not required but an actual and honest objective of a profit must appear from a consideration of all of the relevant facts, including the manner in which the activity is carried out, the time and effort spent with respect to it, and the presence or absence of personal pleasure or recreation associated with the activity. Fox v. Commissioner [Dec. 40,125], 80 T.C. 972, 1006 (1983), affd. by Order (2d Cir; Jan. 23, 1984); Allen v. Commissioner [Dec. 35,977], 72 T.C. 28, 34 (1979); Jasinowski v. Commissioner [Dec. 33,828], 66 T.C. 312, 321 (1976). Furthermore, greater weight is to be given to objective facts than to the parties' statement of their intent. Engdahl v. Commissioner [Dec. 36,167], 72 T.C. 659, 666 (1979). The fact that the chance of making a substantial profit from the activity is relatively small will not eliminate the profit motive if other pertinent factors are present, such as the frequency of the activity and the fact that it is conducted in a business-like manner. See section 1.183-2(c) (Example (6)), Income Tax Regs. Petitioner's contract with Ankarlo contained the possibility of a large *640 return on a small investment if sufficient treasure were found. While this would arguably put petitioner within the purview of section 1.183-2(c) (Example (6)), a more careful analysis of the regulation clearly demonstrates that the oil and gas activity covered by the regulation is for profit not only because of the possibility of a large return on the investment, but also because of the circumstances surrounding that particular business. These circumstances would include the manner in which the business is generally conducted and the amount of time expended on and the frequency of the activity. Here again the amount of time petitioner devoted to treasure hunting would have to be negligible if, as he testified, he also worked 365 days during 1978 at Meridian, completed the salvage of the conveyer system, and attend[ed] auctions in Alaska, Kentucky, Illinois, and Minnesota. The manner in which the activity was conducted also weighs against a profit motive. No business records were made or kept by petitioner except the self-servind contract which he drafted and entered into with Ankarlo. No investigation was made to ascertain whether other activities of the same or a similar *641 nature were in existence and profitable. The record contains no indication that the petitioner had any previous experience in such activities or that he made any attempt to learn about them other than to purchase a "gold-hunter's book" and to hire Ankarlo who admitted that he had never found any gold. Finally, from our observation of the petitioner and Ankarlo during the trial it was apparent that they both derived a great deal of personal pleasure and recreation from their visits to such cities as Albuquerque, Mountain Air, Tuscon and Boise as well *464 as from their many side trips into the desert in petitioner's Ram-Charger. Therefore, from the records as a whole, we are satisfied that petitioner's treasure hunting activity during 1978 constituted an "activity not engaged in for profit." Since no income was realized from such activity the expenses incurred by petitioner with respect to such activity are not deductible. (3) Miscellaneous Expenses. This issue includes a deduction by petitioners of $5,466.04 for miscellaneous business expenses as well as their deduction of $15,056 for cost of goods sold. Of the $5,466.04 which petitioners deducted for miscellaneous business *642 expenses, respondent has conceded $2,137.49. The testimony and records submitted by petitioners with respect to the balance is fragmentary, inconclusive and somewhat contradictory. We are forced to conclude, therefore, that they have failed to carry their burden of proof with respect to that portion of the deduction claimed in excess of the amount allowed by respondent. See Stemkowski v. Commissioner [Dec. 41,253], 82 T.C. 854 (1984). Of the $15,056 which petitioners claimed as cost of goods sold respondent has conceded $1,300.75, being the cost of labor expended with respect to the inventory of used equipment. The balance of the deduction consists of the following: Purchases
$10,245.00
Supplies
211.00
Inventory Shrinkage
3,300.00
TOTAL
$13,756.00
According to petitioners the $10,245 in purchases represent the cost to them of a crane, a tractor, and a forklift which they transferred during 1978 to others in satisfaction of certain debts which they had for labor and other services. Without considering the issue of substantiation we must reject petitioners' attempt to deduct the cost of these items in 1978 without reporting sales in the same *643 amount. With respect to the deduction for supplies the evidence presented by petitioners is in the same condition as that submitted with respect to the non-conceded portion of the miscellaneous business expenses. In other words, it is fragmentary, inconclusive, and somewhat contradictory and therefore does not satisfy petitioners' burden of proof. Stemkowski v. Commissioner, supra. From the record it appears that the deduction of $3,300 for inventory shrinkage represents the estimated decrease in value of the used equipment since its purchase by petitioners. To petitioners, who are on the cash basis, any such decrease in value will be reflected in the price received for the equipment upon its sale and no deduction is allowable in 1978. (4) Medical Expenses. Due to concessions by respondent, the only amounts remaining in dispute at trial with respect to medical expenses were $79.35 in doctor and hospital payments and $5.00 in premiums. From the documentary evidence submitted by petitioners at trial we have found that they are entitled to the medical expenses shown on their return. (5) Self-Employment Tax. As indicated in our findings the parties have disposed *644 of this issue by stipulation. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise provided. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise provided.↩
2. The following calculation represents the mileage associated with Mr. Hezel's work for Meridian: ↩
Meridian to Pfizer project
(250 days) X
(2 times per day) X (20 miles)
=
10,000
Travel Inspecting the Project
=
5,000
15,000
3. Section 183 as relevant to this proceeding provides: SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (a) GENERAL RULE. -- In the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. (b) DEDUCTIONS ALLOWABLE. -- In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed -- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1). (c) ACTIVITY NOT ENGAGED IN FOR PROFIT DEFINED. -- For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212.↩