Robert M. BROWN, Petitioner, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent, Appellee.

No. 89–1586.

United States Court of Appeals, First Circuit.

Heard Jan. 11, 1990.

Decided Feb. 15, 1990.

Rehearing and Rehearing En Banc Denied April 4, 1990.

---

Charles L. Abrahams, for petitioner, appellant.

Barbara I. Hodges, Tax Div., Dept. of Justice, with whom Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, and David English Carmack, Tax Div., Dept. of Justice, Washington, D.C., were on brief for respondent, appellee.

Before BREYER, ALDRICH and TORRUELLA, Circuit Judges.

PER CURIAM.

Taxpayer/petitioner Robert M. Brown is one of approximately 230 professional hockey players who, in 1975, received deficiency notices from the IRS for deductions for off-season expenses claimed in their 1972 income tax returns. In an effort to resolve these cases expeditiously, the Tax Court directed counsel and the Commissioner to designate two representative cases for litigation.[1] The outcome of the test cases would, in theory, guide the disposition, either through settlement or litigation, of both the hockey and non-hockey issues raised in the remaining cases. What was intended as expeditious, however, became a long and tortured safari through years of proceedings, determinations, and delay. The Tax Court eventually dismissed petitioner's claim for failure to properly prosecute pursuant to Tax Court Rule 123(b). Petitioner has cried foul, but the clock has run out. We affirm.

Summarizing the facts and procedural history of this case would be difficult under any circumstances. Unfortunately, petitioner's brief makes the task even more difficult; the factual inaccuracies and lack of clarity characterizing that document have apparently plagued these proceedings from the beginning. Briefly, in 1976, the IRS notified petitioner of a $2,151.37 deficiency in his 1972 income tax. Petitioner sought a Tax Court redetermination. His case was suspended while the two test cases, ante, n. 1, were tried in the Tax Court in 1977, and largely resolved only in 1985. This activated the remaining hockey player cases on the Tax Court calendar. Judge Goffe, of that court, notified the various parties, including petitioner, that he did not believe *Hanna* and *Stemkowski* resolved all of the issues raised in the hockey player cases and directed the parties either to settle or to prepare for trial on the remaining issues. The parties indicated that they were attempting to settle and Judge Goffe, in two subsequent letters, stated that if settlement was near, he saw no reason to write the remand opinion in *Hanna*.

1. The designated cases were *Stemkowski v. Commissioner,* decided 76 T.C. 252 (1981), *aff'd in part and rev'd in part,* 690 F.2d 40 (2d Cir. 1982), *on remand,* 82 T.C. 854 (1984); *Hanna v. Commissioner,* 763 F.2d 171 (4th Cir.1985); opinion on remand not written.

12

In February, 1986 the Commissioner informed the court that a tentative settlement agreement on the hockey issues had been reached. By June 13, 1986, however, no settlement agreement had been communicated to the court. Judge Goffe notified the parties that if settlement documents were not filed for a significant number of the cases by July 14, 1986, they would be scheduled for trial in January 1987. Petitioner requested more time to pursue settlement. The court acceded to the extent of setting trial for January 12, 1987, and ordered the parties to file any stipulated facts and trial memoranda by December 12, 1986. Petitioner's response was to file, on December 12, a motion to suspend the hockey cases. This the court denied, and set the case for trial on January 12, 1987. On that day petitioner failed to appear, and counsel, stating he was unprepared, requested more time to work out a settlement. The court agreed to delay trial only if the parties set a deadline for settling all the cases. After conferring, the parties agreed on April 1, 1987. On January 23, 1987, after petitioner initially refused to do so and was sanctioned by the court, the parties executed a joint stipulation which governed the resolution of the remaining cases.

April 1 passed, and on June 30, 1987 the Commissioner informed the court that the parties were unable to reach agreement in 79 cases, including the case at bar. The court set a trial date of January 11, 1988, for these cases. On October 5, 1987, however, petitioner moved to disqualify Judge Goffe for unfavorable rulings. The clerk of the Tax Court informed petitioner that this motion would not suspend the proceedings, and that pre-trial motions should still be filed in a timely manner. Judge Goffe denied petitioner's disqualification motion on November 17, 1988. In early December petitioner's counsel filed motions for partial summary judgment in the remaining cases. Because they were not in proper form, the clerk returned the motions to counsel. They were refiled on December 22, 1987, and January 6, 1988. Even had they been for total summary judgment they were obviously tardy. After a hearing on January

11, 1988, the court denied the motions and ordered petitioner's case to trial on the following day. Again on January 12, 1988, petitioner was not present and counsel was unprepared. The court then dismissed the case as to the hockey issues. Trial was scheduled to begin on the non-hockey issues on February 22, 1989. Again, petitioner was not present and counsel was unprepared. The court dismissed this final part of the case and determined that a deficiency of $2,151.37 for tax year 1972 was due from petitioner.

Petitioner asserts that Judge Goffe abused his discretion in dismissing this case and in failing to disqualify himself, and, that by refusing to grant petitioner's motion for partial summary judgment, he improperly disturbed a binding settlement agreement. We take up these issues in reverse order.

■ Before a court can disturb a settlement agreement, the parties must have reached one. When settlement negotiations between litigating parties have concluded, it is customary to file with the court a stipulation dismissing the case. See, e.g., Fed.R.Civ.P. 41. Despite Judge Goffe's repeated directions to do so, however, petitioner never filed a stipulation or settlement agreement. On January 23, 1987, he and the Commissioner stipulated to an agreement which would govern the settlement of the remaining hockey player cases, but this stipulation cannot be construed as a settlement agreement in any individual case. In fact, the January 23, 1987 stipulation specifically provides, in paragraph 8, for the possibility that the parties might not agree to settle a particular case: "In the event that the parties cannot agree, the dispute shall be submitted to the Court for resolution." Petitioner's argument that the hockey issues were settled is belied by the record, which shows that in May 1987, petitioner rejected the Commissioner's settlement offer, which was to apply to 90 different cases. In the seven months that followed, until the court eventually dismissed this case, petitioner failed to respond to ten letters from the Commissioner concerning settlement and

pre-trial stipulations, and ignored the court's orders to stipulate issues for trial. No binding settlement agreement was ever filed with the court or, so far as appears, existed between the parties.

■ Petitioner also asserts that Judge Goffe manifested a personal bias against his counsel throughout the proceedings which culminated in his denial of petitioner's motion for partial summary judgment. As an example of this supposed bias, out of a record over 800 pages long, petitioner cites just two statements by Judge Goffe, made on January 12, 1987, when petitioner's counsel appeared in court unprepared for trial and requested more time to negotiate a settlement.

> The Court [to the Commissioner]: You're willing to settle based upon an affidavit of the petitioner, is that it?
>
> .    .    .    .    .
>
> The Court: I recognize that, but we have here all these tax returns prepared by Mr. Abrahams claiming deductions for which there's apparently no substantiation.

A review of the entire January 12, 1987 transcript reveals that Judge Goffe's statements were made in the context of his attempt to determine how close the parties were to settling and whether to postpone the trial. When the hearing concluded, the court granted the parties additional time to settle the cases in whatever manner they agreed:

> Now, if you reach an impasse—let's just leave it this way: We'll call it again Wednesday morning at 11:00 o'clock. If the parties have reached an agreement, then I'll examine the agreement and see if the Court can live with it. If it can, then we'll formalize it. We'll file it in all the docketed cases that are not—that we don't have the paperwork for, and then that will be it. If the parties can't agree, then we'll go on the record Wednesday at 11:00 and see what the areas of disagreement are and see if it can be resolved.

Far from indicating personal bias, the transcripts reveal Judge Goffe's repeated attempts to accommodate petitioner's counsel, his recognition of counsel's burden in

handling over 200 cases, and his allowance of additional time for settlement negotiations when it became clear that *Hanna* and *Stemkowski* did not provide the guidance anticipated. It is difficult to imagine what more the court could have done.

Petitioner's motion for partial summary judgment, although filed literally on the eve of the 1988 trial, received a full hearing and consideration by the court. As the court did not deny the motion because of personal bias, and the motion rested on petitioner's baseless argument that the case was settled, the court's ruling is not erroneous.

When, after years of negotiation, petitioner was unable to reach a favorable settlement agreement with the Commissioner concerning his 1972 income tax deficiency, he faced two options. He could either try the case in the Tax Court or withdraw his petition and pay the deficiency. The outcome of a trial is never certain, of course, but "[i]f a party decides to try a case, it must be prepared to accept whatever benefits or burdens flow from its decision." *Leger v. Drilling Well Control, Inc.*, 592 F.2d 1246, 1251 (5th Cir.1979). Endless delay and disregard of the court's orders are not benefits petitioner may claim.

■ We are not prepared to match the extraordinary patience exhibited by the Tax Court. The record shows that petitioner imposed on it, literally for years, negatively, and affirmatively, even to the point of filing, and pursuing, an affidavit of prejudice based solely on the court's conduct of the proceedings, and thus improper on its face. *United States v. Kelley*, 712 F.2d 884, 889–90 (1st Cir.1983); *Inglis v. Commissioner*, 896 F.2d 543 (2d Cir.1990). In this court petitioner's brief starts out in the middle of nowhere, perhaps one of the most incomprehensible briefs we have ever seen. The writing of this opinion has been almost exclusively effected without help from petitioner, and we have never come across anything that might even suggest a basis for an appeal. The appeal is totally frivolous, and we assess special costs against petitioner and his counsel, jointly

and severally, in the amount of $2,500. *Solman Distributors, Inc. v. Brown–Forman Corp.*, 888 F.2d 170, 173 (1st Cir. 1989).

*Affirmed, with double court costs.*