Peter STEMKOWSKI, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 1206, Docket 81–4194.

United States Court of Appeals, Second Circuit.

Argued May 24, 1982.

Decided Sept. 17, 1982.

---

Charles L. Abrahams, La Mesa, Cal., for appellant.

David E. Carmack, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Joanathan S. Cohen, Tax Div., Dept. of Justice, Washington, D.C., of counsel), for appellee.

Before LUMBARD, OAKES and PIERCE, Circuit Judges.

OAKES, Circuit Judge:

This supposed test case[1] involves the taxability of a Canadian citizen who formerly played professional hockey for the New York Rangers of the National Hockey League (NHL). As a nonresident alien, Stemkowski was subject to United States tax on that portion of his income connected with his performance of services in this country, and entitled to deduct expenditures relating to such United States income. The taxable year involved is 1971. After a trial in 1977, the Tax Court, William A. Goffe, Judge, filed an opinion in February 1981, 76 T.C. 252, upholding the Commissioner on all major issues. In July 1981, Judge Goffe entered a judgment of deficiency against Stemkowski (taxpayer) for $3,927. We affirm in part, and reverse and remand in part.

The five major issues on appeal are:

1. Whether the Tax Court correctly held that the stated salary in the NHL Standard Player's Contract covered only the services of taxpayer during the regular hockey season and not during the off-season, training camp, or the play-offs, so that only the time a player spent in Canada during the regular season could be used to calculate the portion of his salary excludable from his United States income.

2. Whether the Tax Court correctly held that taxpayer was not entitled to deduct certain off-season physical conditioning expenses claimed as ordinary and necessary business expenses.

3. Whether the Tax Court correctly held that taxpayer was not entitled to various other deductions for what he claimed were ordinary and necessary business expenses, including those for newspapers, magazines, telephone, television, "promotional" activities, and gifts to trainers.

4. Whether the Tax Court correctly held that taxpayer was not entitled to deduct sales taxes because they were not connected with the conduct of his trade or business within the United States, or to deduct amounts withheld from his salary to pay premiums on disability insurance.

5. Whether the Tax Court correctly held that taxpayer was not entitled to deduct living costs incurred in and around New York, the home city of his hockey team.

## FACTS

Taxpayer was traded prior to the beginning of taxable year 1971 to the New York Rangers, who play their home games at Madison Square Garden in New York City. He had previously signed a two-year NHL Standard Player's Contract with the Detroit Red Wings, and this contract was assigned to and assumed by the Rangers. The contract provided for compensation of $31,500 in the 1970–71 season and $35,000 in the 1971–72 season plus various NHL bonuses, including a $1500 bonus for each round won in the play-offs. The player agreed to give his services in all "league championship" (*i.e.*, regular season), exhibition, and play-off games, to report in good physical condition to the club training camp at the time

---

1. We say "supposed" because the parties agreed that this case and *Hanna v. Commissioner* (T.C. No. 3485–76), which were consolidated for briefing, trial, and opinion, would dispose of 41 other hockey players' cases before the Tax Court. But *Hanna* is currently on appeal to the Fourth Circuit (No. 81–2122), which may take a different view of one or more aspects of the case than we do. It is not clear from the record whether the consolidation agreement was intended to apply only to disposition in the Tax Court, or to proceedings beyond the Tax Court as well. In any event, the Tax Court entered an order suspending decisions in the 41 other cases until the decisions in the instant case and *Hanna* have become final.

and place fixed by the club, to keep himself in good physical condition at all times during the season, and to participate in any and all promotional activities of the club and the league that in the opinion of the club promoted the welfare of the club or professional hockey.

In addition to their rights under this contract, NHL players in 1971 were entitled under the NHL's Owner-Player Council Minutes and Agreements to receive $25 per exhibition game plus $25 per week of training camp unless they had played fifty or more games in the previous season, in which case they received $600 in lieu of payments for exhibition games and training camp allowances other than transportation, food, and lodging. The players were also provided with medical and disability coverage, per diem expenses while traveling during the regular season, and various other benefits.

An NHL player's year is divided into four periods: (1) training camp, including exhibition games, beginning in September and lasting approximately thirty days; (2) the "league championship" or regular season of games beginning in October and lasting until April of the following year; (3) the play-off competition, which ends in May; and (4) the off-season, which runs from the end of the regular season for clubs that do not make the play-offs, or from a club's last play-off game, to the first day of training camp. Stemkowski lived in Canada during all of the off-season and most of the training camp period and played in Canada fifteen days out of 179 during the regular season and five out of twenty-eight days during the play-offs. When he was not living in Canada or travelling to games elsewhere, he lived in Long Beach, New York, near New York City, where he shared a rented house with other professional hockey players.

On his tax return, Stemkowski reported $44,271 in income, of which he initially excluded $10,625 as earned in Canada, and claimed approximately $3,000 in miscellaneous deductions.[2] The Commissioner issued Stemkowski a notice of deficiency in February 1975, determining that Stemkowski had underestimated the proportion of his income derived from services in the United States, and that he had not established that the deductions he claimed were for ordinary and necessary business expenses connected with his United States income. In the petition from this determination of deficiency that he filed with the Tax Court, Stemkowski increased his claimed exclusion for income earned in Canada to $22,439, and claimed additional and increased deductions, which, after several amendments to his petition, totalled approximately $17,000.[3]

2. 

| | |
|---|---|
| Travel expenses | $ 1,292.00 |
| Trade journals | 75.00 |
| Promotional expenses, photographs, etc. | 343.00 |
| Home telephone and television (business use) | 86.00 |
| State disability insurance | 74.00 |
| Sales tax (includes large purchases and wedding rings) | 475.00 |
| Expenses incurred to keep in good physical condition throughout the year: | |
| Golf shoes | $ 60.00 |
| Golf balls | 50.00 |
| Green fees | 330.00 |
| Bowling | 30.00 |
| Sweatsuit/apparel | 10.00 |
| Running shoes | 15.00 |
| Swim suit | 15.00 |
| Tennis balls | 10.00 |
| Tennis shoes | 15.00 |
| Therapeutic treatment | 25.00 |
| YMCA membership | 100.00 |
| Golf clubs | $ 90.00 |
| Tennis racquet | 4.00 |
| Trainers' fees | 20.00 |

3. 

| | |
|---|---|
| Travel expenses | $ 5,813.00 |
| Team city expenses | 6,525.00 |
| Travel between job sites | 425.00 |
| Taxi cab fares | 552.00 |
| Entertainment of the mass media, team members and fans | 660.00 |
| Hockey tickets | 500.00 |
| Answering fan mail | 60.00 |
| Hockey News | 60.00 |
| Newspaper to read hockey news | 30.00 |
| Long distance calls | 720.00 |
| TV and telephone for business reasons | 86.00 |
| Trainers' tips | 250.00 |
| Hairstyling for image | 90.00 |
| Golf shoes | 60.00 |
| Golf balls | 60.00 |
| Green fees | 384.00 |
| Bowling | 40.00 |

The less time Stemkowski was in the United States during the period covered by his contract, the less United States tax he owes. Thus, Stemkowski could reduce his tax liability either by showing that he was in Canada for a longer period during the time covered by the contract or, as is at issue here, that the contract covered a time during which he was in Canada. The Tax Court held that the total number of days for which Stemkowski was compensated under his contract was not 234 (all but the off-season) as he had claimed on his tax return, or 365 as he had claimed before the Tax Court, but only 179, the number of days in the regular season. The Tax Court held that Stemkowski could not use days spent in Canada during training camp, the play-offs, or the off-season in calculating his foreign-source exclusion from income. The Tax Court further found that Stemkowski's off-season physical conditioning expenses, because incurred solely in connection with his contractual obligation to show up in good condition at training camp in Canada, were not connected to income from the conduct of a trade or business within the United States and thus were not deductible. Expenses incurred in New York, the home city of the Rangers, were held not to have been incurred while away from home and in the pursuit of business. The Tax Court also denied Stemkowski's claimed expenses for magazines, newspapers, promotions, telephone, television and trainers' gifts as not incurred for his trade or business because these were not required by his contract. The Tax Court denied Stemkowski's claimed deduction for disability insurance for lack of evidence that these payments were deductible; the claimed deduction for sales tax was denied because it was not connected with income from the conduct of a trade or business in the United States. Stemkowski's claimed expenses above those reimbursed by his employer while travelling to and from opponents' cities during the regular season and play-offs were denied by the Tax Court for lack of substantiation. Taxpayer has duly appealed under section 7482 of the Internal Revenue Code of 1954 (I.R.C.).

## DISCUSSION

### 1. *Allocation of Income*

■ The first issue is the Tax Court's determination of the portion of Stemkowski's compensation under the NHL Standard Player's Contract that was drawn from United States sources. As a nonresident alien, Stemkowski was taxable on income connected with the conduct of a trade or business, including the performance of personal services, within the United States. I.R.C. §§ 871(b), 864(b). Where services are performed partly within and partly outside the United States, but compensation is not separately allocated, Treas. Reg. § 1.861–4(b) (1975) allocates income to United States sources on a "time basis":

> [T]he amount to be included in gross income will be that amount which bears the same relation to the total compensation as the number of days of performance of the labor or services within the United States bears to the total number of days of performance of labor or services for which the payment is made.

This regulation applies to Stemkowski because the NHL Standard Player's Contract does not distinguish between payments for services performed within and outside the United States.

The parties disagree on what components of a hockey player's year are covered by the basic compensation in the NHL Standard Player's Contract, and therefore on how to compute the time-basis ratio. The taxpayer contends here as he did before the Tax Court that the contract salary compensates

| | |
|---|---|
| Bowling shoes | $  8.00 |
| Sweat suit | 20.00 |
| Adidas | 15.00 |
| Therapeutic treatment | 100.00 |
| YMCA membership dues | 155.00 |
| Canoe Club (health club) dues | 100.00 |

| | |
|---|---|
| Depreciation of golf clubs | $141.00 |
| Sales tax | 475.00 |
| Swim suit | 13.00 |
| Tennis balls | 20.00 |
| Depreciation of tennis racquet | 4.00 |

him for training camp, play-off, and even off-season services. The Commissioner argues and the Tax Court held that the contract salary covers only the regular season, and therefore that contract salary should be allocated to United States income in the same proportion that the number of days played in the United States during the regular season (164) bears to the total number of days in the regular season (179).[4] We agree with the Commissioner and the Tax Court that the contract does not cover off-season services, but we hold that the Tax Court's finding that the contract does not compensate for training camp and the play-offs as well as the regular season is clearly erroneous. *See Inwood Laboratories, Inc. v. Ives Laboratories,* —— U.S. ——, ——, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606 (1982).

The Tax Court's holding was premised on provisions in the NHL contract and other players' agreements, and on the testimony of league and club officials. The first paragraph of the NHL Standard Player's Contract provides that if a player is "not in the employ of the Club for the whole period of the Club's games in the National Hockey League Championship Schedule," *i.e.,* for the entire regular season, then he receives only part of his salary, in the same ratio to his total salary as the "ratio of the number of days of actual employment to the number of days of the League Championship Schedule of games." Paragraph 15 provides that if a player is suspended, he will

not receive that portion of his salary equal to the ratio of "the number of days [of] suspension" to the "total number of days of the League Championship Schedule of games." The Tax Court concluded from these two paragraphs, and from the NHL's further agreements to pay players separate bonuses for participating in the play-offs and flat fees plus travel, room, and board for participating in training camp and pre-season exhibition games, that the basic contract salary did not cover play-off or training camp services.[5]

We cannot uphold that finding, as we believe it clearly erroneous. The formulas for docking salary given in the contract's first and fifteenth paragraphs are not persuasive evidence that the salary compensates only for the regular season. These formulas may well use the number of days in the regular season in their denominators for administrative convenience (*e.g.,* because the number of days to be spent in the play-offs cannot be known in advance) or to maximize the salary penalty per day lost. As to the testimony relied upon by the Tax Court, to a certain extent the owners and league officials have an interest in having the contract cover the shortest possible timespan so as to maximize loss to suspended or striking players. Furthermore, two of the league and club officials, Leader and McFarland, testified that at least training camp time was included in the contract.

---

**4.** Although the Tax Court did not discuss separately the component of Stemkowski's total reported income representing play-off bonuses, the Commissioner concedes that Stemkowski's play-off compensation should be allocated separately from his contract salary, according to a ratio whose numerator contains the number of Ranger play-off days in the United States (23), and whose denominator contains the total number of Ranger play-off days in 1971 (28).

**5.** This interpretation was supported by the conflicting testimony of present or former league and club officials. The Commissioner's witnesses Clarence S. Campbell, a former NHL president, Vincent H.D. Abbey, a part owner and officer of the Seattle Totems of the Western Hockey League (WHL), and Emile Francis, former coach and general manager of the New York Rangers, all testified that the contract salary covered the regular season, not the off-

season, training camp and exhibition games, or the play-offs. The Commissioner's witness George A. Leader, former president of the WHL, testified that the contract covered training camp as well as the regular season. The taxpayer's witness William H. McFarland, former player and coach and general manager of the Seattle Totems, testified that the contract salary covered all services named in the contract. Notwithstanding objections from both sides to admitting evidence from non-parties, these witnesses' testimony was properly admitted by the Tax Court as going to the hockey industry's custom and usage. *See, e.g., Lambourne v. Manchester Country Properties, Inc.,* 135 Vt. 178, 374 A.2d 122 (1977); *Berwick & Smith Co. v. Salem Press, Inc.,* 331 Mass. 196, 198–99, 117 N.E.2d 825, 826 (1954); *Restatement (Second) of Contracts* § 222(1) & (2) (1979); U.C.C. § 1–205 (1977).

The contract's plain language, moreover, requires in Paragraph 2(a) that a player "report to the Club training camp . . . in good physical condition," and a player who fails to report to training camp and participate in exhibition games is subject under Paragraph 3 to a $500 fine, deductible from his basic salary. True, experienced players were paid $600 plus room and board for training camp under the Owner-Player Council minutes and Agreements, but we read those Agreements as providing that amount merely to cover the additional expenses of being away from home at training camp.

Paragraph 2 of the contract also plainly requires a player's participation in play-off games in exchange for basic contract salary. While it is true that bonuses are provided for play-off games won, these are simply added incentives, above and beyond salary, to get into and win the play-offs. In this respect, they are just like other incentive bonuses the contract provides to influence conduct during even the regular season, e.g., bonuses for the club's finishing in third place or better ($2500 in this case), or for the number of goals a player scores per season above certain minimums (at least $100 per goal over 20). Furthermore, players are required to participate in all play-off games for which they are eligible. Players may be terminated for failure to participate in the play-offs, but players receive nothing for the play-off games that they *lose*. Thus, we hold that the basic contract salary covered both play-off and training camp services.

We agree, however, that the off-season is not covered by the contract. During the off-season, the contract imposes no specific obligations on a player. Stemkowski argues that the obligation to appear at training camp "in good condition" makes off-season conditioning a contractual obligation. Fitness is not a service performed in fulfillment of the contract but a condition of employment. There was no evidence that Stemkowski was required to follow any mandatory conditioning program or was under any club supervision during the off-season. He was required to observe, if anything, only general obligations, applicable as well throughout the year, to conduct himself with loyalty to the club and the league and to participate only in approved promotional activities.

### 2. Off-season Physical Conditioning Expenses

■ Stemkowski claims deductions for his off-season expenses on golf, bowling, tennis, running, swimming, and using a YMCA and a health club, as business expenses under I.R.C. § 162, on the theory that they were necessary to meet an obligation in the NHL contract to keep in good physical condition throughout the year. The Tax Court reasoned, however, that off-season conditioning was related only to arriving fit at training camp and therefore held that Stemkowski's conditioning expenses were nondeductible because allocable to income earned in Canada. This holding is clearly erroneous. Off-season conditioning contributes not only to the fitness required of players on the first day of training camp under Paragraph 2(a) of the contract but also to the fitness required throughout the regular season under Paragraph 2(b) of the contract. Thus, Stemkowski's off-season conditioning expenses were at least in part connected to United States income.

Because of its erroneous reasoning the Tax Court did not reach the question, on which both sides presented evidence, whether Stemkowski's off-season conditioning expenses were deductible under I.R.C. § 162 as ordinary and necessary for business, or were nondeductible under I.R.C. § 262 as for personal fun and relaxation. Not everything that is done to develop one's body, even if one is a professional athlete, is necessarily for business. For a hockey player, weight-lifting, jogging, bicycling, and other exercises to strengthen and coordinate the body may well be at the business end of the spectrum, because these activities may contribute directly to professional hockey playing ability. Golf, tennis, squash, or bowling, however, at least for a hockey player, may well be at the fun-and-relaxation end of the spectrum, especially in

light of Stemkowski's testimony that he played golf to relax, played tennis and squash for fun, and bowled with a girlfriend.

There is no general rule that can be laid down in connection with such expenses, and we remand to the Tax Court to make a factual determination, on the basis of its familiarity with the record and the demeanor of the witnesses, as to which of these expenses were deductible. We remand also for allocation of the off-season conditioning expenses between Canadian and United States source income. With respect to some of the claimed conditioning expenses, *e.g.,* club membership, the Tax Court will also need to determine whether the taxpayer has satisfied the substantiation requirements of I.R.C. § 274.

### 3. *Miscellaneous Business Expenses*

■ Stemkowski also sought to deduct as business expenses the costs of magazines and newspapers in which he read hockey news; the costs of "promotional" activities such as entertaining fans, team members, and media people, purchasing hockey tickets for friends, having his hair styled, and answering fan mail; the tips he paid his trainers; and some of the costs of maintaining a telephone and television. The Tax Court disallowed these deductions on the erroneous ground that they were not required by the employer. While a requirement by an employer that an employee make an expenditure may be one factor weighing in favor of the employee's right to a deduction, *see* 4A Mertens, *Law of Federal Income Taxation* § 25.12, at 83 & n. 33 (1979), it is not a prerequisite for the deduction. I.R.C. § 162(a) requires only that the expense be a necessary and ordinary expense paid or incurred during the taxable year in carrying on a trade or business. *Commissioner v. Lincoln Savings & Loan Ass'n,* 403 U.S. 345, 352, 91 S.Ct. 1893, 1898, 29 L.Ed.2d 519 (1971); *Commissioner v. Tellier,* 383 U.S. 687, 689, 86 S.Ct. 1118, 1119, 16 L.Ed.2d 185 (1966). We nonetheless sustain in part

the Tax Court's decision on different grounds, *Walton v. Morgan Stanley & Co.,* 623 F.2d 796, 797 & n. 1 (2d Cir. 1980); *see also id.* at 800 (dissenting opinion). For all expenses except those for hockey publications and for fan mail, Stemkowski either failed to establish deductibility, or failed to meet the substantial requirements of I.R.C. § 274(d), which applies to travel expenses,[6] expenditures on activities or facilities generally considered for entertainment, amusement, or recreation, or gift expenses.

■ The purchase of general newspapers is personal and cannot be deducted. *Noland v. Commissioner,* 269 F.2d 108, 110–12 (4th Cir.), *cert. denied,* 361 U.S. 885, 80 S.Ct. 156, 4 L.Ed.2d 121 (1959). Because Stemkowski's claimed purchase of hockey journals might be deductible as relating to his work, however, and because no substantiation under § 274(d) is required for such expenses, we remand for a determination whether Stemkowski's "hockey news" deduction meets the "ordinary and necessary" business expense standard of I.R.C. § 162. *See Noland v. Commissioner, supra,* at 111–13 (Court affirming deduction of Wall Street Journal subscription but not subscription to *Time* magazine by businessperson).

■ All of Stemkowski's "promotional" expenses were properly disallowed except those connected with answering fan mail. He failed to meet his burden under I.R.C. § 162(a) of showing that his entertainment expenses were for business purposes (indeed, as he testified, "at the time I was single and if I see a nice looking girl, I might send her over a drink...."). *See also Handelman v. Commissioner,* 509 F.2d 1067, 1074–75 (2d Cir. 1975); *Hughes v. Commissioner,* 451 F.2d 975, 978–79 (2d Cir. 1971). Moreover, he failed to substantiate these expenses are required by I.R.C. § 274(a) and (d). He likewise failed to show that his gifts of tickets for away hockey games, which in any case could not be deducted in an amount exceeding $25,

---

**6.** Stemkowski evidently concedes on appeal that his claimed deduction for travel expenses

lacks merit.

I.R.C. § 274(b), were for business purposes, see Robinson v. Commissioner, 44 T.C. 20, 37–38 (1965), or to substantiate these ticket expenses. Hairstyling is personal and therefore nondeductible. Drake v. Commissioner, 52 T.C. 842, 844 (1969). Answering fan mail, however, might be work-related and need not be substantiated under I.R.C. § 274(d), and we remand for a factual determination whether Stemkowski's expenses for this purpose were ordinary and necessary business expenses.

■ While gifts to team trainers might be deductible, there is a $25 limitation on the deduction of any such gift under I.R.C. § 274(b), and in any case Stemkowski did not furnish sufficient substantiation of these expenses. See Steel v. Commissioner, 437 F.2d 71, 72–73 (2d Cir. 1971). Furthermore, the Tax Court's finding that Stemkowski's telephone and television expenses were personal is far from clearly erroneous: many of his claimed long distance calls were to his mother and his claim of television expenses is supported only by his testimony that he watched hockey games when he had a chance.

### 4. Sales Tax and Disability Insurance Deductions

■ Only three types of expenses not related to income from a trade or business in the United States are allowed as deductions to nonresident aliens under I.R.C. § 873(b): casualty or theft losses; charitable contributions; and personal exemption(s). A nonresident alien's United States sales taxes are not deductible unless shown to be business related. Stemkowski failed to make this showing; for example, taxpayer's sales taxes were not shown to be business related, he specifically deducted the sales tax on wedding ring purchases, and these expenses are not otherwise deductible under I.R.C. § 873(b). Disability insurance premiums, even for hockey players, are personal and not business expenses. Blaess v. Commissioner, 28 T.C. 710 (1957); Rev. Rul. 81–192, 1981–31 I.R.B. 6. Thus the Tax Court properly disallowed Stemkowski's sales tax and disability insurance deductions.

### 5. Team City Living Expenses

■ The final claim on this appeal relates to the taxpayer's living expenses while residing in the area of New York City, his hockey club's headquarters. Here as in Wills v. Commissioner, 411 F.2d 537, 540 (9th Cir. 1969) (professional baseball player who maintained Spokane residence while playing baseball for the Los Angeles Dodgers could not deduct Los Angeles living expenses), the third test of Commissioner v. Flowers, 326 U.S. 465, 470, 66 S.Ct. 250, 252, 90 L.Ed. 203 (1946), was not met. As this court said in Rosenspan v. United States, 438 F.2d 905, 911 (2d Cir.), cert. denied, 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 108 (1971) (quoting Flowers), " 'there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer' and 'such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.' " But Stemkowski's "travel" from Canada, which he claims was home, was clearly not a business necessity but due rather to Stemkowski's personal choice to live in Canada. A deduction would not be available to a Ranger living in New York City all year; it is likewise unavailable to Stemkowski who lived there only part time.

Nor was this a situation such as that in Six v. United States, 450 F.2d 66, 69 (2d Cir. 1971), where the employment and hence the residence away from home may have been temporary. Here taxpayer's assignment was indefinite. The fact that he had been traded and was subject to being traded does not make a difference. Gardin v. Commissioner, 64 T.C. 1079, 1084 (1975). A two-year employment contract with an option to renew is not merely temporary in nature.

Completely distinguishable are cases such as United States v. LeBlanc, 278 F.2d 571 (5th Cir. 1960), Moss v. United States, 145 F.Supp. 10 (W.D.S.C. 1956); and Emmert v. United States, 146 F.Supp. 322 (S.D. Ind. 1955), in which public officials were legally required to reside in one place but to per-

form duties elsewhere. *Cf. Jones v. United States,* 648 F.2d 1081 (6th Cir. 1981) (official may deduct expenses at minor place of business). Nor is it material that Stemkowski was on an H–2 visa, *see* 8 U.S.C. § 1101(H)(ii), admitted for a certified period or for one year subject to renewal, 8 C.F.R. § 214.2(h)(3), (7), (11); such visas or renewals are easily obtained by Canadian hockey players working for United States teams, as Stemkowski himself did from 1968 through 1977. *See Carranza (Zuri) v. Commissioner,* 11 T.C. 224 (1948); Rev. Rul. 74–453, 1974–2 C.B. 19.

We therefore affirm the Tax Court's disallowance of Stemkowski's claimed "team city expenses," as his living expenses in and around New York were not for business travel away from home.

Judgment affirmed in part; reversed and remanded in part.